UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: ) | |
| ) | |
| TRI-CITY COMMUNITY ) | Chapter 11 Case |
| ACTION PROGRAM, INC., ) | No. 15-11569-JNF |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| TRI-CITY COMMUNITY ) | |
| ACTION PROGRAM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | No. 17-01035-JNF |
| PHILIP BRONDER-GIROUX, and ) | |
| ANN HOWSER, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff Tri-City Community Action Program, Inc. (the "Debtor"), by and through the Official Committee of Unsecured Creditors (the "Committee"), by way of complaint against defendants Philip Bronder-Giroux, individually and in his capacity as an officer and director of the Debtor ("Bronder-Giroux") and Ann Howser, individually and in her capacity as an officer of the Debtor ("Howser") (together, the "Defendants"), hereby alleges as follows:

*Parties*

1. On April 23, 2015 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has continued in the possession of its assets and in the management of its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. On June 5, 2015 the United States Trustee appointed the Committee. On April 12, 2017 this Court entered an order authorizing the Committee to, *inter alia*, commence and prosecute any and all claims and causes of action that the Debtor holds as and against the Defendants, including, without limitation, all claims and causes of action arising under state and federal law, including those claims and causes of action arising under the Bankruptcy Code.

3. Upon information and belief, Bronder-Giroux is an individual residing at 40 Sprague St. Malden, MA 02148-4007. At all times relevant to the claims set forth herein, Bronder-Giroux held the title of Executive Director of the Debtor and was an officer and/or a director of the Debtor.

4. Upon information and belief, Howser is an individual residing at 14 Chadwick St. North Billerica, MA 01862-2402. At all times relevant to the claims set forth herein, Howser held the title of Comptroller of the Debtor and was an officer of the Debtor.

*Jurisdiction and Venue*

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(c)(2).

6. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

*Allegations Applicable to All Counts*

7. The Debtor is a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 110 Pleasant Street, Malden, Massachusetts.

8. The Debtor's historical charitable purpose was to provide social services in furtherance of the elimination of poverty -- and its causes and effects -- in the cities of, among others, Everett, Malden and Medford, Massachusetts by providing individuals and families in

need with the opportunity for education and training, and obtaining work to permit served individuals and families to live in decency and dignity.

9. Since its formation, the Debtor focused its efforts on development of social service programs and related infrastructure for the benefit of lower income residents of Everett, Malden and Medford. The Debtor's programs included provision of subsidized low income housing, subsidized heating fuel deliveries, home weatherization assistance, Head Start preschool education programs, homeless prevention and legal and computer services. The Debtor also owns real property located at 22 Charles Street, Malden, Massachusetts, and at 115 Washington Street, Malden, Massachusetts, where the Debtor operated subsidized residential housing.

10. The Debtor historically funded its operations through federal and state grants and subsidies, corporate and private donations, and fundraising activities. Principal funding sources included federal grants to provide Head Start programs, subsidized low-income housing, mortgage financing of the Property provided through Massachusetts Department of Housing and Community Development ("DHCD"), and subsidized financing of the Debtor's initiatives under the federal Low Income Housing Energy Assistance Program administered by DHCD ("LIHEAP").

11. Upon information and belief, all, or substantially all of the federal and state grants and subsidies, and/or the corporate and private donations that the Debtor used to fund its programs were awarded and/or donated upon conditions that those funds be used to fund specific programs, *to wit*, the subsidized low income housing program, the subsidized heating fuel delivery program, the home weatherization assistance program, the Head Start preschool education programs, the homeless prevention program, or the legal and computer services

programs. Upon information and belief, the federal and state grants and subsidies, and/or the corporate and private donations awards and donations were made with one or more restrictions.

12. Over the years, financial reporting to the Debtor's Board of Directors (the "Board), including audited financial statements filed with the Massachusetts Office of the Attorney General, reflected that the Debtor's various programs were at least break-even. In late November 2014, Bronder-Giroux, the Debtor's Executive Director disclosed to the Board that several of its programs were in fact running at a deficit, a fact that neither of the Defendants had previously revealed to the Board. In that disclosure, the Board learned that some restricted grant funding for the then-current fiscal year was being used to pay prior year expenses. The Board immediately halted that practice, and launched an internal investigation which also revealed that proper grant accounting of restricted funds had not always been followed, with comingling of restricted grant funds resulting in some restricted grant funds being used to support operating expenses of programs not covered by particular restricted grants. In early December 2014, the Board accepted the resignations of Bronder-Giroux as Executive Director and Howser as Comptroller, and reported its findings to DHCD, the state agency with oversight over the grants at issue.

13. DHCD and the Massachusetts Office of the Attorney General conducted separate investigations of the Debtor. As a result of that investigation by DHCD, the Debtor agreed to surrender its designation as the community action agency for its service area, and to wind up its DHCD-funded programs. DHCD determined that the Debtor's LIHEAP and Head Start programs should be transferred to another agency for operations, which occurred in December 2014 and January 2015. DHCD also directed its funding for the supported housing programs to that agency for fiscal oversight, although the properties remained owned by the Debtor.

14. Under the operational and financial leadership of the Defendants, the Debtor continued its Child and Family Services ("CFS") and Advocacy and Community Services ("ACS") programs, which together accounted for less than half its revenue, in spite of the fact that those programs generated enormous deficits in 2011 and the years thereafter leading up to the Petition Date. The Defendants made it possible for the Debtor to continue to fund the substantial CFS and ACS program deficits by incurring additional debt on the strength of its energy programs, which it had no means of repaying, and to siphon significant amounts of restricted funds from its energy programs. Those energy programs, the restricted funding for alone represented approximately sixty (60%) of the Debtor's overall revenue, consistently operated at only a break-even basis throughout, and therefore did not create profits to fund the substantial CFS and ACS program deficits.

15. Indeed, if the Defendants did not have access to the energy program funds to fund the CFS and ACS operating losses, the Debtor would have been forced to close its Head Start program as early as 2011, a decision not actually made until 2014 when the remainder of the Debtor's operations were by then in jeopardy, including its otherwise sustainable energy programs.

16. As a consequence of the mismanagement of the Debtor's programs and funding sources, including the failure to terminate or downsize programs with inadequate funding for the sake of preserving other programs with adequate funding, the Debtor was forced to seek protection in bankruptcy to facilitate an orderly liquidation of its assets.

17. As of the Petition Date the Debtor had approximately $3,461,000 of assets at book value, and total liabilities of approximately $4,165,000 comprised of approximately $2,819,000 of secured debt, and approximately $1,345,000 of unsecured debt.

18. Upon information and belief, the excess of the Debtor's overall secured and unsecured liabilities above the amount of the Debtor's overall assets, was directly and proximately caused by the Defendants' (a) mismanagement of the Debtor's programs and funding sources, including, without limitation, their failure to terminate or downsize programs with inadequate funding for the sake of preserving other programs with adequate funding, (b) improper accounting of restricted funds, (c) comingling of restricted funds, and (d) using restricted funds to fund operating expenses of programs not covered by those restricted grants.

*Count I*
*(Debtor v. Bronder-Giroux)*
*Breach of Fiduciary Duties*

19. The Debtor, by and through the Committee, repeats and incorporates by reference the allegations in paragraphs 1 through 19 as if the same were fully set forth at length herein.

20. At all times relevant hereto, Bronder-Giroux was an officer and/or a director of the Debtor. In those capacities, Bronder-Giroux owed the Debtor strict fiduciary duties of candor, good faith, loyalty, and care.

21. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to continue its CFS program services in 2011 and after, even though he knew or should have known that the Debtor could not fund the full costs of CFS program services without misappropriating other restricted funds.

22. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to make or authorize payments on account of CFS programs in 2011 and

after, even though he knew or should have known that the Debtor did not have adequate unrestricted funds, or other funds dedicated to those programs from which to make those payments.

23. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to make or authorize payments on account of CFS programs in 2011 and after, even though he knew or should have known that the Debtor was funding those programs with restricted funds dedicated to other programs.

24. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to maintain and continue its transitional houses and related advocacy programs in 2011 and after, even though he knew or should have known that the Debtor could not fund the full costs of those program services without misappropriating other restricted funds.

25. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to make or authorize payments on account of the Debtor's transitional housing and related advocacy programs in 2011 and after, even though he knew or should have known that the Debtor could not fund the full costs of those program services without misappropriating other restricted funds.

26. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by causing the Debtor to incur additional secured and unsecured debts, including one or more secured lines of working capital financing, to fund the prolonged and continuing operating deficits of the CFS and ACS programs, including the Head Start and transitional housing programs, even though he knew or should have known that the Debtor had no reasonable or actual future ability to repay those secured and unsecured debts.

27. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by improperly continuing those programs of the Debtor that were not adequately funded, engaging in waste by using improperly using funds that were expressly restricted for other uses, failing to take steps to mitigate the Debtor's losses, and generally continuing the overall historical operations of the Debtor without adequate operating funding.

28. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by his negligent performance of his day-to-day management of, and his general oversight of the Debtor's operations, and its finances and cash resources, *inter alia*, by unjustifiably failing, or otherwise unjustifiably refusing to take steps to mitigate the Debtor's losses, and to reduce its historical program operations to meet the limitations of the Debtor's actual program and operating funding.

29. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by not promptly informing the Board that one or more of the Debtor's programs were not adequately funded, and that he was engaging in waste by using improperly using funds that were expressly restricted for other uses so that the Board could take prompt

steps to mitigate the Debtor's losses, and to reduce its historical program operations to meet the limitations of the Debtor's actual program and operating funding.

30. Bronder-Giroux breached his strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by relying on fiscal reports generated by Howser as the Debtor's Comptroller that he knew or should have known were materially inaccurate, or that otherwise did to inform Bronder-Giroux about the true availability of funds that could be properly spent for the Debtor's various programs.

31. Each and all of the foregoing acts, errors, and omissions constitute one or more breaches by Bronder-Giroux of his fiduciary duties to the Debtor.

32. Upon information and belief, the Debtor was insolvent at the time of each of the foregoing acts, errors, and omissions that constituted one or more breaches by Bronder-Giroux of his fiduciary duties to the Debtor.

33. As a direct and proximate result of Bronder-Giroux's breaches of his fiduciary duties to the Debtor, the Debtor sustained damages in amount to be determined by this Court after trial of this adversary proceeding.

34. The Defendants are jointly and severally liable to the Debtor for damages in amount to be determined by this Court after trial of this adversary proceeding.

*Count II*
*(Debtor v. Howser)*
**Breach of Fiduciary Duties**

35. The Debtor, by and through the Committee, repeats and incorporates by reference the allegations in paragraphs 1 through 34 as if the same were fully set forth at length herein.

36. At all times relevant hereto, Howser was an officer of the Debtor. In that capacity, Howser owed the Debtor fiduciary duties of candor, good faith, loyalty, and care.

37. Howser breached her strict duty of care to the Debtor by her negligent performance of her day-to-day management of, and her general oversight of the Debtor's finances and cash resources, *inter alia*, by causing or allowing the Debtor to continue to fund its CFS program services in 2011 and after, even though she knew or should have known that the Debtor could not fund the full costs of its CFS program services without misappropriating other restricted funds.

38. Howser breached her strict duty of care to the Debtor by her negligent performance of her day-to-day management of, and her general oversight of the Debtor's finances and cash resources, *inter alia*, by causing or allowing the Debtor to continue to make or authorize payments on account of CFS programs in 2011 and after, even though she knew or should have known that the Debtor did not have adequate unrestricted funds, or other funds dedicated to those programs from which to make those payments.

39. Howser breached her strict duty of care to the Debtor by her negligent performance of her day-to-day management of, and her general oversight of the Debtor's finances and cash resources, *inter alia*, by causing or allowing the Debtor to make or authorize payments on account of CFS programs in 2011 and after, even though she knew or should have known that the Debtor was funding those programs with restricted funds dedicated to other programs such as the energy programs.

40. Howser breached her strict duty of care to the Debtor by her negligent performance of her day-to-day management of, and her general oversight of the Debtor's finances and cash resources, *inter alia*, by causing or allowing the Debtor to make or authorize payments on account of the Debtor's transitional housing and related advocacy programs in 2011

and after, even though she knew or should have known that the Debtor could not fund the full costs of those program services without misappropriating other restricted funds.

41. Howser breached her strict duty of care to the Debtor by her negligent performance of her day-to-day management of, and her general oversight of the Debtor's finances and cash resources, *inter alia*, by causing or allowing the Debtor to incur additional secured and unsecured debts, including one or more secured lines of working capital financing, to fund the prolonged and continuing operating deficits of the CFS and ACS programs, including the Head Start and transitional housing programs, even though she knew or should have known that the Debtor had no reasonable or actual future ability to repay those secured and unsecured debts.

42. Howser breached her strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by not promptly informing the Board that one or more of the Debtor's programs were not adequately funded, and that she was engaging in waste by using improperly using funds that were expressly restricted for other uses so that the Board could take prompt steps to mitigate the Debtor's losses, and to reduce its historical program operations to meet the limitations of the Debtor's actual program and operating funding.

43. Howser breached her strict fiduciary duties of candor, good faith, loyalty, and care to the Debtor by creating and publishing to Bronder-Giroux fiscal reports that she knew or should have known were materially inaccurate, or that otherwise did not inform the Defendants about the true availability of funds that could be properly spent for the Debtor's various programs.

44. Howser breached her fiduciary duties of loyalty, care and good faith by improperly continuing those programs of the Debtor that were not adequately funded, engaging

in waste by using improperly using funds that were expressly restricted for other uses, failing to take steps to mitigate the Debtor's losses, and generally continuing the overall historical operations of the Debtor without adequate operating funding.

45. Each and all of the foregoing acts, errors, and omissions constitute one or more breaches by Howser of her fiduciary duties to the Debtor.

46. Upon information and belief, the Debtor was insolvent at the time of each of the foregoing acts, errors, and omissions that constituted one or more breaches by Howser of her fiduciary duties to the Debtor.

47. As a direct and proximate result of Howser's breaches of her fiduciary duties to the Debtor, the Debtor sustained damages in amount to be determined by this Court after trial of this adversary proceeding.

48. The Defendants are jointly and severally liable to the Debtor for damages in amount to be determined by this Court after trial of this adversary proceeding.

**WHEREFORE**, the Debtor, by and through the Committee, demands judgment in the Debtor's favor and against the Defendants as follows:

i. against the Defendants, jointly and severally, for Bronder-Giroux's breaches of his fiduciary duties, awarding to the Debtor damages in an amount to be determined after a trial of this adversary proceeding, together with pre-judgment interest thereon;

ii. against the Defendants, jointly and severally, for Howser's breaches of her fiduciary duties, awarding to the Debtor damages in an amount to be determined after a trial of this adversary proceeding, together with pre-judgment interest thereon;

iii. awarding the Debtor and/or the Committee the reasonable attorneys' fees and costs of this adversary proceeding; and

      iv.    granting to the Debtor and the Committee such other and further relief as this Court deems proper and just.

> Respectfully submitted,
> **The Official Committee of Unsecured Creditors of Tri-City Community Action Program, Inc.**
> By its counsel**,**
>
> /s/  Jesse I. Redlener
> Jesse I. Redlener [BBO# 646851]
> DALTON & FINEGOLD, LLP
> 34 Essex Street
> Andover, MA 01810
> Phone: (978) 269-6420
> Fax: (978) 824-9362
> jredlener@dfllp.com

Dated: April 26, 2017

(ORIGINAL COMPLAINT FILED April 21, 2017)