BY-LAWS

1.  TRI-CITY COMMUNITY ACTION PROGRAM, INC.

ARTICLE I
NAME AND OFFICE

Section 1. NAME. The name of this corporation shall be Tri-City Community Action Program, Inc., (Tri-CAP).

Section 2. PRINCIPAL OFFICE. The principal office of the Corporation shall be maintained in the City of Malden, Middlesex County, Commonwealth of Massachusetts.

ARTICLE II
PURPOSE AND ACTIVITIES

This Corporation is organized as a non-profit corporation pursuant to the laws of the Commonwealth of Massachusetts, for the following purposes and activities:

To promote the well-being of poor and low income people in the cities of Everett, Malden, Medford and surrounding communities. To engage in activities appropriate to an anti-poverty community action agency including advocacy, community organizing, program development, fundraising, program administration and service delivery. These activities can include, and need not be limited to, child development, energy assistance, homelessness and housing services as well as the provision of affordable housing to low and moderate income households. To conduct activities in such ways as to encourage participation, self-development, and independence among Tri-CAP's clients. To assist other agencies and to serve disadvantaged people of this region. To use research, program innovations, consciousness-raising activities, and advocacy to advance the cause of the poor to a higher place on the list of national, state, and local priorities.

The agency may undertake politically controversial activities. In carrying out its basic mission and goals Tri-CAP may actively engage in campaigns connected with constitutional amendments, referenda, municipal ordinances, law reform and lawful attempts to influence government officials to respond to the grievances of the poor.

Neither Board members nor staff shall, in their official capacities, support or oppose any candidates for any elected office.

(Rev. June 2011)

1

## ARTICLE III
## OFFICERS

Section 1. ENUMERATION AND ELECTION OF OFFICERS. The officers of the corporation shall be President, Vice President, Treasurer, and Clerk. All of the officers shall be elected by the Board of Directors at an annual meeting of the corporation and shall hold office for two years. Officers shall be selected from the members of the Board of Directors and may be reelected to an unlimited number of terms within membership guidelines stated in Article VI, Section 1., of the by-laws.

Section 2. PRESIDENT. The President shall be the chief officer of the corporation, and, subject to the control of its members, shall be the legal representative of the corporation. The President of the corporation shall preside at the meetings of the Board of Directors and will convene with the Executive Director and establish an agendum for each Board meeting and shall be an ex officio member of all committees with the exception of the Nominating Committee. The President shall only vote in cases where there is a tie vote. The President shall appoint Board members to the following committees: Finance Committee; Personnel and EEO Committee; Planning & Evaluation Committee; Membership & By-Laws Committee; and other special committees as may be created by the President. The President shall be a signatory on all corporate bank accounts, legal notes, and securities, and is authorized to sign any other financial or legal documents as necessary. The President shall request the resignations of inactive Board members upon recommendation from the Membership & By-laws Committee.

Section 3. VICE-PRESIDENT. The Vice President shall have all the powers and perform all the duties of the President in the absence of the President.

Section 4. TREASURER. The Treasurer shall be the chief financial officer of the corporation and have the responsibility for oversight for the proper financial management of the corporation funds and assets. She/he shall review financial statements presented by the Comptroller of receipts and expenditures of the corporation for the past month, and shall ensure that all quarterly and other tax reports are timely filed. The Treasurer shall be a signatory on all corporate accounts, legal notes, and securities, as may be required and shall be the chair of the Finance Committee.

Section 5. CLERK. The Clerk shall insure recording and maintenance of records of all proceedings of the members in a book or series of books kept for that purpose, which books should be kept within the Commonwealth at the principal office of the corporation. Corporate records shall be open at all reasonable times to the inspection of any member. Such book(s) shall also contain records of all meetings of the incorporators and the original or attested copies of the articles of organization and by-laws and name of all members and the address of each. If the Clerk is absent from any meetings of members, a temporary clerk chosen at the meeting shall exercise the duties of the clerk at the meeting. Minutes of the Board's regular

(Rev. June 2011)

monthly meeting shall be made available to the public upon request. Translation into another language of regular Board meeting minutes shall be provided if requested by a resident of the Tri-City area.

## ARTICLE IV
## STAFF

Section 1. EXECUTIVE DIRECTOR. The Executive Director shall be appointed by the Board of Directors and shall serve at its pleasure and shall be the chief administrative officer of the corporation; shall be responsible for carrying out the policies and programs of the corporation and the directions of the Board of Directors and perform such other functions as set forth by the Board from time to time.

Section 2. OTHER STAFF. The Executive Director shall employ such additional staff authorized by the Board of Directors as may be required to carry out the programs and work of the corporation. Such staff shall be responsible to and under the direction of the Executive Director, as set forth in the Employee Handbook, Employee Handbook attachments and Practices of the corporation and/or Collective Bargaining Agreements.

## ARTICLE V
## FINANCES

Section 1. DISPOSITION OF FUNDS. All bank accounts shall be in the name of the corporation and in banks designated by the Board of Directors. All payments from Agency accounts for less than $5,000 shall be made by checks signed by two of the following--Executive Director; Deputy Director; Comptroller; President; Vice President; or Treasurer. Any expenditure greater than, or equal to, $5,000 requires that one of the two required signatures be that of a Board Officer.

Section 2. AUDIT. A yearly independent audit shall be made of the accounts of the corporation.

Section 3. BONDING. Bonding shall be provided for all persons handling funds.

Section 4. GENERAL OPERATIONS. The corporation may perform, either directly or indirectly and either alone or in conjunction with other persons and organizations, acts incidental to the purposes of the corporation, and may use and exercise all powers conferred from time to time by the laws of the Commonwealth of Massachusetts upon corporations organized under Chapter 180 of the General Law. All of the corporate activities shall be carried on within the meaning of Section 501(a) and Section 501(c)(3) of the U.S. Internal Revenue Code of 1954 as amended.

(Rev. June 2011)

Section 5. DISSOLUTION. Upon the dissolution of the corporation by a two-thirds (2/3) board vote, the Board of Directors shall, after paying or making provisions for the payment of all of the liabilities of the corporation, dispose of all of the assets of the corporation in such a manner, or to such organization or organizations operated exclusively for charitable, educational, religious, or scientific purposes which qualify as an exempt organization or organizations under Section 501(c)(3) of the U.S. Internal Revenue Code of 1954 as amended.

## ARTICLE VI
## BOARD OF DIRECTORS

Section 1. NUMBER AND TERMS OF OFFICE. The Board of Directors may consist of eighteen (18) but no less than fifteen (15) members. They shall be elected and appointed in the manner set forth in Section 2 of this Article. Members selected under clauses 1 and 3 of Section 2 of this Article may serve for a term of two (2) years and be reelected every two years thereafter. The term of office for Board members serving under clause 2 of Section 2 of this article shall be coterminous with the term of office of the Mayor or other appointing public official; provided, however, that any Board member appointed under clause 2 may remain on the Board until the earlier of 90 days after a new mayor or appointing public official assumes office, or said new mayor or public appointing official appoints a new member.

Section 2. COMPOSITION AND MANNER OF SELECTION. The members of the Board of Directors shall be appointed and elected as follows –

> 1. Not fewer than one-third (1/3) of the members shall be representatives of the tri-city low income community served by Tri-CAP programs. These individuals shall be chosen from nominations made by community or neighborhood organizations recognized by the Board as representing the poor in the area and will be subject to full board approval by vote of the general membership.

> 2. One-third of the members shall be public officials, or their representatives, of Malden, Medford, Everett, provided that any such appointments shall be made from business, industry, labor, religious, private welfare, private education, or other major private groups or interests in the community, subject to the approval of the Board of Directors. The Board of Directors may seek public officials, or their appointees, from surrounding communities served by Tri-CAP programs. The mayor or Selectmen, or their representative, of each city or town will serve on the Board subject to the approval of the Board of Directors. Representatives need not be public officials, but must have full authority to act on behalf of the nominating official.

(Rev. June 2011)

> 3. The balance of the members shall be elected from local industries, labor, religious, private welfare, private education or other major private groups and interests in the communities within the tri-city area and surrounding communities served by Tri-CAP programs with the approval of the Board of Directors.

Section 3. VACANCIES. Vacant Board positions will be referred to the Membership and Bylaws Committee for follow up. See Article VIII Section 5 for Membership and Bylaws Committee Responsibilities.

> Vacancies which are occasioned for any reason other than expiration of term of office shall be filled as follows -
> 1. As to representatives of the poor -- such vacancies shall be filled for the duration of the unexpired term of office through new nominations made by recognized community or neighborhood organizations from the community in which the vacancy occurred, subject to the approval of the Board.
>
> 2. As to public officials -- such vacancies shall be filled by mayoral or by town designation of another appointee to fill the unexpired term of office.
>
> 3. As to representatives of other interests in the community - such vacancies shall be filled for the unexpired term of office by appointment and approval of the Board.

Section 4. PETITION BY OTHER GROUPS OF THE POOR OR COMMUNITY AGENCIES FOR ADEQUATE REPRESENTATION. Community agencies and representative groups of the poor which feel themselves inadequately represented on the Board of Directors may petition the Board to adjust and realign Board membership.

> Whenever a petition signed by at least twenty-five (25) *bonafide* members of the petitioning group is submitted to the Board, the Board shall within thirty (30) days after receipt thereof provide a fair opportunity for the petitioning group or agency to present its case for more adequate representation at an informal hearing open to the public, which informal hearing may be held in conjunction with a regular or special meeting of the Board of Directors.

The petition shall set forth a proposal for addition to or realignment of the membership of the Board of Directors. A written statement by the Board of Directors shall be prepared within ten (10) days after a decision is rendered relative to the petition which statement shall set forth the reasons supporting whatever action is taken. A copy of the written statement shall be promptly sent to the petitioning group.

(Rev. June 2011)

Section 5. REMOVAL. A low income representative, private sector Board member, or public sector Board member who is not an elected official (including Officers of the Corporation) may be removed for cause by two-thirds (2/3) vote of the members of the Board of Directors present at the meeting, for such a purpose, on a charge that the actions of that member have been markedly inconsistent with the nature and purposes of a community action agency, or that the actions of the member have caused damage to the good name and standing of Tri-CAP in the community. A Board member accused of behavior or actions warranting removal will be afforded a hearing before the full Board and have the right to be represented by a legal agent in defending his/her case. Nothing in this paragraph shall be deemed to create legally enforceable rights in a member charged with misconduct or wrongdoing. Any vote of the Board under or pursuant to this Section shall be deemed final and unappealable.

Additionally, removal may occur when a Board member fails to attend three (3) consecutive regular meetings without the approval of the Board of Directors, or whenever a member fails to meet the qualifications under the terms Section 2 of this Article. The requirement for regular board attendance does not supercede the requirements of the American with Disabilities Act.

Section 6. RESIGNATION. A low income representative, private sector or public sector Board member may resign from the Board for any stated or unstated reason at any time during membership on the Board. The Board requests, however, that written notification stating the effective date of resignation (stating reason is optional), be submitted to the Board President. The Board President shall have the option to ask a Board member to delay a resignation date to the end of the member's term or until a replacement can be found to fill the vacancy that will be created by the resignation.

## ARTICLE VII
## BOARD POWERS AND MEETINGS

Section 1. POWERS. The Board of Directors shall have charge of the business of the corporation and shall develop and carry out plans for the financial administration of the corporation. It hires, fires and evaluates the Executive Director, authorizes the employment of additional staff, and establishes personnel policies and practices.

> It shall be charged with the development and maintenance of the programs. It shall enforce compliance with all conditions of funding source grants. It shall determine, with due consideration to the Massachusetts Department of Housing and Community Development and the U. S. Department of Health and Human Services regulations and policies, the rules and procedures for the Board. It shall oversee the extent and quality of the participation of low-income persons in the programs of Tri-CAP.

(Rev. June 2011)

Section 2. REGULAR MEETINGS. The Board of Directors shall meet in regular session at least nine (9) times each year, at a time and place determined by the Board. Notices of all regular meetings shall be given to all members of the Board not less than seven (7) days in advance of the meeting date, with the exception of emergency meetings. The notices for emergency meetings shall set forth the matters to be considered at the meeting, except that additional matters may be considered upon concurrence of the majority of the members present at any meeting. No action taken at any regular Board meeting attended by one-half (1/2) or more of the members shall be invalidated because of the failure of any member or members of the Board to receive any notice properly sent, or because of any irregularity in any notice actually received. All meetings of the Tri-CAP full board are open to the public, except that upon a vote of the Board, it may go into executive session to discuss personnel matters, litigation, contracts, or other matters, public discussion of which could prejudice the interests of Tri-CAP. Public notice of Board meetings shall be provided at least five (5) days in advance.

Section 3. SPECIAL MEETINGS. The President may call special meetings of the Board of Directors and shall call a special meeting upon the written request of five (5) members of the Board.

Section 4. QUORUM. The quorum for a meeting of the Board shall be at least fifty percent of the non-vacant seats on the Board, and a majority of members in attendance at any Board meeting shall, in the presence of a quorum, decide its action. A quorum may be established by telephone, to the extent allowed by law. A quorum once established, shall be deemed to be in effect until such meeting is adjourned. The practice of "committee of the Whole" will not be allowed.

1. Presence through Communications Equipment.
   From time to time as the Board President may allow, members of the Board of Directors or any Committee designated thereby may participate in a meeting of the Board or such committee as designated by the Board by means of a conference telephone or similar communications equipment by means of which all persons participating can hear each other at the same time and participation by such means shall constitute presence in person at the meeting.

Section 5. ANNUAL MEETING. There shall be an annual meeting of the Board of Directors during the month of June, at such a location as may be designated by the Board of Directors. Written notice shall be given to all members of the Board of the time and place at least five (5) days prior to the fourth Monday in June and five (5) days prior to the meeting.

(Rev. June 2011)

7

Section 6. RULES OF ORDER. Except as required by Federal or State laws or regulations or by other specific provisions of these by-laws, all Board meetings shall be conducted in accordance with Roberts Rules of Order.

Section 7. PROXY VOTING. Proxy voting is prohibited.

## ARTICLE VIII
## COMMITTEES AND LOW INCOME CAUCUS

All committees will be structured in accordance with governmental regulation and each committee shall be assigned a Chair by the President.

Section 1. EXECUTIVE COMMITTEE. This Committee shall have no more than 5 members including the officers of the Board. The Committee is empowered to act on the Board's behalf when decisions need to be made in between a meeting of the full Board. The purpose of the Executive Committee is to organize all of the Board of Directors activities and to develop its operating procedures and practices. It shall also assure the development of an effective administrative support program that promotes the use of standard operating procedures among all units of the agency, and compliance with funding source requirements. The functions of the Committee are detailed below.

- Establish all special Board committees.
- Assure conformance by By-Laws to funding source policy and agency adherence to them, and recommend changes.
- Make certain that all Board committees perform assigned functions.
- Establish Board committees' reporting requirements.
- Assure that the low income community has adequate assistance in and opportunity to inform the Board of needs.
- Appoint the Selection Committee for applicants for the position of Executive Director, i.e., interview and make recommendations for Board approval.
- Review and recommend major organizational changes.
- Recommend approval of target area boundaries after consulting with the residents in the area.
- Participate in all aspects of the Internal Conflict Resolution Procedures as established jointly by the Board and the Agency's Head Start Policy Council.

Section 2. FINANCE COMMITTEE. This committee shall have no more than five (5) members with the Treasurer acting as Chair. Any other Board officer may fulfill the role of acting Chair if the Treasurer is otherwise unavailable. The purposes of the Finance Committee are -- to assure the development of effective administrative support for programs that will ensure competent financial administration of the agency, and to mobilize community resources. The functions of the committee are as follows -

(Rev. June 2011)

8

    Establish budget planning guidelines.
    Cooperate with the Planning & Evaluation Committee, review and make recommendations regarding all proposals, grants, and contracts.
    Review the agency's financial administration and assure adherence of the fiscal plan to the agency's objectives.
    Review facility requirements and recommend improvements and modifications.
    Review the financial audit prepared by the independent auditor and recommend actions to ensure prompt resolution of questionable issues appearing in the audit.
    Review all proposed charitable activities sponsored by the agency.
    Review operating expenses and determine when in-kind contributions should be substituted.
    Review and approve a realistic and reasonable plan for obtaining in-kind and volunteer services to support the Agency's operations.

Section 3. PERSONNEL AND EEO COMMITTEE. This Committee shall have no more than five (5) members. The purpose of the Personnel & EEO Committee is -- to assure the effective utilization of agency personnel and to interpret and make recommendations concerning the personnel policies and procedures of the agency. It shall assure that all relevant federal and other statutory requirements are complied with in the hiring and personnel policies affecting affirmative action at Tri-CAP. The functions of the Committee are as follows -
    Interpret, review, and make recommendations regarding personnel policies and procedures of the agency and its delegates.
    Review the salary administration program and make recommendations for appropriate changes.
    Review and make recommendations pertinent to agency staff development.
    Review and approve job qualifications for agency personnel.
    Ensure compliance with funding source rules and regulations pertaining to personnel.
    Hear employee or client complaints wherein the Executive is named a party in the grievance or complaint. In those cases, the Personnel Committee's ruling will be the final word on the matters at hand.
    Review and make recommendation regarding the agency's orientation and training plan.
    Review the Employee Handbook and Employee Handbook attachments annually to make certain that the Handbook and attachments are in compliance with applicable state and federal laws and accurately state the Agency's practices and policies.

Section 4. PLANNING & EVALUATION COMMITTEE. This Committee shall have no more than five (5) members. The purposes of this committee are -- to recommend specific goals, objectives, projects and strategies for an integrated anti-poverty effort; and to evaluate project and program operations in relation to the approved goals, objectives and strategies. The following are the functions of the committee -

(Rev. June 2011)

> Assure the adequacy of procedures for presenting to the committee the possible Agency's goals, objectives, programs and strategies.
> Ensure the development and implementation of an Agency-wide planning cycle.
> Receive input from target area residents assessing the needs of the poor and strategies for dealing with those needs.
> Formulate and recommend goals, objectives, programs, and work plans and planning documents.
> Review information and referral system reports and evaluate the data in relation to Agency goals and objectives.
> On a quarterly basis, review all program progress against approved plans to ensure the success of program operations and to recommend changes in plans as needed.
> Receive and review requests for program and budget amendments; recommend action to the Board regarding such requests.
> Assure that the Agency staff is providing sufficient technical assistance and support to develop neighborhood leadership and organizational capability.
> Review proposals and plans for anti-poverty oriented community projects developed by federally-funded, state, and local organizations.

Section 5. MEMBERSHIP & BY-LAWS COMMITTEE. This Committee shall have no more than five (5) members. The purposes of this committee are -- to ensure adequate recruitment, orientation, and ongoing leadership development of all members of the Board of Directors; to review and process any amendments or changes in the by-laws to the Board of Directors. The functions of this committee include -
> Identification of member recruitment sources.
> Recruit new Board members when vacancies arise.
> Present new board recruits to the larger Board for review and approval.
> Overseeing the orientation of all new Board members, developing training materials as needed and assisting with the hiring of consultants, when necessary, to offer Board training or development.
> Monitoring member attendance at regular Board meetings.
> Producing documented drafts of any by-law modifications.
> Assuring by-laws are in compliance with all funding source regulations.
> Developing a list of Award recipients for the Board's Annual Meeting.

Section 6. LOW INCOME CAUCUS. This Committee shall consist of a minimum of five (5) members to a maximum of one-third of general Board membership at any given time. The purposes of the Caucus are -- to strengthen the voice of low income people in the decisions affecting them and to increase the participation of the poor in program planning and determination of priorities. The functions of the Caucus are as follows -
> Assist the Membership and By-Laws Committee in recruiting low income community or neighborhood organizations for the Board.

(Rev. June 2011)

10

>Aid the Agency in developing a statement of need relative to low income people of the communities served.

Section 7. NOMINATING COMMITTEE (Ad Hoc). There shall be a Nominating Committee consisting of at least three (3) to no more than five (5) members. Each year within thirty days before the annual meeting of the Board of Directors, the Nominating Committee shall nominate a slate of officers for election by the Board at the annual meeting. A written report of such nominations shall be mailed to all directors at least one week before the Board meeting. The President shall not be a member of the Nominating Committee.

ARTICLE IX
CODE OF CONDUCT AND POLITICAL ACTIVITY

Section 1. CODE OF CONDUCT. Tri-CAP will observe the following minimum standards governing the conduct of board members employees, and their immediate families.
>For the purposes of these requirements, an immediate family member shall be defined as follows: Husband, Wife, Father, Father-in-law, Sister, Sister-in-law, Mother, Mother-in-law, Brother, Brother-in-law, Son, Son-in-law, Daughter, and Daughter-in-law.
>>1. Board members, employees and members of their immediate families shall not solicit or accept gifts, gratuities, favors, or anything of monetary value from:
>>>a. Any contractor, potential contractor, or subcontractors of Tri-CAP.
>>>b. Any person applying for or receiving benefits or services through or from the agency.
>>>c. Any person in a position to benefit otherwise from the activities of the organization.
>>
>>2. No Board member, employee or member of his/her immediate family shall have a financial interest in a contract of Tri-CAP (except an employee's contract or employment) which is supported by CSBG funds. This shall not be construed to deny services provided by the Agency to a person otherwise eligible to receive such services.
>>
>>3. A Board member or employee of Tri-CAP shall not participate in any matter involving CSBG funds, which affects, to his/her knowledge, the financial interest of:
>>>a. Such Board member or employee, or his/her immediate family (this prohibition shall not apply to matters of reimbursement of Board members or to an employee's contract of employment);
>>>b. His/her business partner(s) or a business organization with which

(Rev. June 2011)

11

        he/she is associated;
        c. Any person or organization with whom he/she is negotiating or has any arrangement concerning prospective employment.

    4. No person may serve on the Tri-CAP Board who is:
        a. A Board member or employee of a delegate agency, except a delegate agency which is responsible for comprehensive community programming and planning for low-income areas served by the Agency.
        b. An employee of Tri-CAP, DHCD, or U.S. Department of Health and Human Services.

Section 2. POLITICAL ACTIVITY. No substantial part of the activities of the Corporation shall be the carrying on of propaganda and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. Employees of Tri-CAP are free to engage in various kinds of political activities during their off duty hours and in their private capacities.

## ARTICLE X
## CIVIL RIGHTS

No person shall be denied membership on the Board of Directors or employment in any program sponsored, funded, or subcontracted by this Corporation because of race, sex, marital status, sexual preference, religion, national origin, color, veteran's status, age, or disability status.
This is in accordance with Title VI and VII of the Civil Rights Act of 1964 as amended.

## ARTICLE XI
## LIABILITY OF MEMBERS OF THE CORPORATION

The Corporation shall have the power to indemnify any Director or Officer of the Corporation, or members of the Head Start Policy Council, against expenses actually and reasonably incurred by him/her in connection with the defense of any action, suit or proceeding, civil or criminal, in which she/he is made a part by reason of being or having been such Director or Officer or Policy Council member, except in relation to matters as to which he/she shall be adjudged in such action, suit or proceedings to be liable for gross negligence or misconduct in the performance of duty to the Corporation; and to make any other indemnification that shall be authorized by the by-laws, or resolutions adopted after notice by the members entitled to vote. Liability Insurance will be secured by the agency to protect all Board members, Policy Council members, and the Executive Director.

(Rev. June 2011)

## ARTICLE XII
## WHISTLEBLOWER POLICY

The Tri-CAP Whistleblower Policy is kept on file at the Agency's administrative offices and is available for review upon request.

## ARTICLE XIII
## AMENDMENTS

These By-Laws may be amended by two-thirds vote of the members of the Board of Directors present at the meeting for such a purpose, providing written notice setting forth the proposed amendments shall be mailed or given to each member entitled to vote no less than ten (10) days prior to such meeting.

A true copy attest herein:

_____
Signed
Clerk of Corporation
Adopted (June 6, 2011)

Revised  June 6, 2011
         (Date)

Rev. June 2011

13